UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANJING KAPEIXI NETWORK TECHNOLOGY CO., LTD,<br><br>Plaintiff**,**<br><br>**v.**<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>Defendants. | Civil Action No. 26-cv-374 |

## **COMPLAINT**

Plaintiff, Nanjing Kapeixi Network Technology Co., Ltd. d/b/a Cupshe ("Plaintiff" or "Cupshe"), by and through its undersigned counsel, hereby files this Complaint against ▇▇▇▇ ▇▇▇▇ and the individuals and entities operating ▇▇▇▇ ▇▇▇▇ (collectively, "Defendants") for copyright infringement pursuant to 17 U.S.C. § 501 *et seq.* In support thereof, Plaintiff states as follows:

## **NATURE OF THE ACTION**

1. Cupshe is a clothing and swimwear apparel company incorporated and having a primary place of business in China.

2. Cupshe creates and sells high-quality swimwear and related products, whose appearance and images associated with its advertising have been registered with the U.S. Copyright Office. Plaintiff operates predominantly through its online webstore, www.cupshe.com and has generated millions of dollars in sales through on-line retail channels.

1

3. Plaintiff advertises its products through associated photographs of models wearing each of its popular swimsuits.

4. At issue in this case are photographs registered with the United States Copyright Office under registrations VA 2-478-310, VA 2-478-311, and VA 2-478-312, and ("Copyrighted Works").

5. Plaintiff has brought this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by utilizing unauthorized, unlicensed, and infringing versions of Plaintiff's Copyrighted Works to sell and/or offer for sale various competing products (the "Infringing Products").

6. Plaintiff conducted an Internet inquiry and discovered that the Defendants were selling Infringing Products utilizing infringing copies of the Copyrighted Works that were displayed or advertised alongside the Infringing Products, despite having no license or authorization to use the Copyrighted Works.

7. Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating an e-commerce store using the Store Name ▮▮▮▮▮▮▮▮▮▮ (the "Seller Alias").

8. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Copyrighted Works and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining.

9. Defendants' Infringing Products are cheaply produced and inferior to Plaintiff's licensed products. The Infringing Products threaten to destroy Plaintiff's reputation and goodwill

and cause significant harm to Plaintiff's business for which there is no adequate remedy because advertising and sales of its products is the core of Plaintiff's business.

10. Plaintiff therefore brings this action for federal copyright infringement pursuant to 17 U.S.C. § 501(a), *et seq.*

**JURISDICTION AND VENUE**

11. This Court has original subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1338 because the claim in this action is brought under the Copyright Act, 17 U.S.C. § 101, *et seq*.

12. This Court may exercise personal jurisdiction over a non-resident of the state in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania authorizes personal jurisdiction over defendants pursuant to 42 Pa. Cons. Stat. § 5322(a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

13. Additionally, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact

and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

a. Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platform(s) and storefront(s), via on-line marketplace websites such as Shein.com, and others (the "Third Party Platforms"), under the Seller Alias, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that Defendants operate, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

b. Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their storefronts through which Defendants,

4

    their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

  c.  Upon information and belief, Defendants' online storefront(s) reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

  d.  Upon information and belief, Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

  e.  Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

  f.  Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefront(s) selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's

        Products on various on-line marketplaces and/or diluting and driving down the retail market price for the Plaintiff's Products (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

g.  Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

h.  Upon information and belief, Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

i.  Upon information and belief, Defendants are aware of Plaintiff's products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

14.    Venue is appropriate here as a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's evidence attached as Exhibit 2, Defendants offers for sale products infringing upon Plaintiff's Copyrighted Works to consumers in this forum. Select screenshots of Plaintiff's evidence demonstrate that Defendants were and are offering for sale and/or selling Infringing Products in this forum:



15.     Defendants' offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district under 28 U.S.C. § 1391(b)(2). Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

16.     Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states that "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other

7

United States judicial district, as provided for in Section 1391(b)(3). This means that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non-resident defendants may be sued in any judicial district. Even if the Court finds that personal jurisdiction is lacking, venue is still proper under statute.

17. Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in this district, or else because Defendants do not reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

18. For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, Defendants are committing tortious acts in Pennsylvania by offering for sale and/or sale of their Infringing Products through their online marketplaces, are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the Commonwealth of Pennsylvania.

## THE PARTIES

**Plaintiff Cupshe**

19. Plaintiff Cupshe is a clothing and swimwear apparel company incorporated and having a primary place of business in China.

20. Plaintiff is the creator and seller of high-quality swimwear and related products, whose appearance and images associated with its advertising have been registered with the U.S. Copyright Office. The Certificates of Registration for Plaintiff's Copyrighted Works are attached hereto as **Exhibit 1**.

21. Plaintiff has generated millions of dollars in sales through on-line retail channels.

22. Among the exclusive rights granted to Plaintiff under the Copyright Act are the rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Works.

23. Plaintiff widely advertises and promotes genuine goods bearing Plaintiff's Copyrighted Works through authorized distributors and third parties via the Internet. Over the past several years, visibility on the Internet, particularly via the Third-Party Platforms, has become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff and its authorized distributors will be expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's products.

24. Defendants' Seller Alias is indexed on the Third-Party Platforms and competes directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

25. Defendants are individuals and business entities who, upon information and belief, reside and/or operate the Seller Alias in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations.

26. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b) because Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of Infringing Products. Defendants conduct business, or assist in business conducted, throughout the

United States (including within the Commonwealth of Pennsylvania and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of items that incorporate infringing versions of Plaintiff's Copyrighted Works.

27. Furthermore, based on the nature of Defendants' activities, they do not qualify for any safe harbor provisions under the Digital Millennium Copyright Act (DMCA) or other relevant laws, as they are actively involved in the creation, promotion, and sale of Infringing Products rather than acting as mere service providers or intermediaries.

## DEFENDANTS' UNLAWFUL CONDUCT

28. The success of online sales of products to the United States has resulted in significant infringement of Plaintiff's Copyrighted Works. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps.

29. Plaintiff has identified hundreds of fully interactive e-commerce stores, including the Seller Alias, offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States.

30. Based on Plaintiff's investigation, Defendants have sold varying types of Infringing Products, with an unknown total retail value. The Infringing Products have been distributed to customers across the U.S., severely impacting the market for Plaintiff's genuine products.

31. Defendants operate at least the Seller Alias identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of Plaintiff's Copyrighted Works and/or works substantially similar thereto.

32. Defendants' sale, distribution, and advertising of Infringing Products is likely to cause, and has caused, consumers to believe that Defendants are offering and selling authorized

products when in fact they are not. To illustrate, below are several examples which show that the listings for the Infringing Products prominently feature exact copies of the Copyrighted Works:

| Plaintiff's Select Copyrighted Work | Select Infringing Listing |
|---|---|
| | |

11

| Plaintiff's Select Copyrighted Work | Select Infringing Listing |
|---|---|
|  |  |

33. Screenshot evidence showing the Seller Alias selling Infringing Products is attached as Exhibit 2.

34. Defendants' unauthorized reproduction, distribution, and public display of Plaintiff's Copyrighted Works is irreparably harming Plaintiff and its business.

35. A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2. (*See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). https://www.cbp.gov/document/annual-report/fy-2024-ipr-seizure-statistics). Internet websites like the Seller Aliases are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See*

*Combating Trafficking in Counterfeit and Pirated Goods*, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), Jan. 24, 2020, at 8).

36. E-commerce retail platforms such as those used by Defendants do not subject new sellers to verification and confirmation of their addresses and identities, thus allowing infringers to extensively use false names and addresses when registering with these e-commerce retail platforms and open multiple seller aliases in attempts to avoid detection.

37. Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Alias by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

38. Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products on e-commerce platforms such as Shein, and other Third-Party Platforms. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their illegal operation, and to avoid being shut down.

**The Scope of Defendants' Infringing Activities**

39. Upon information and belief, Defendants operate more than one merchant storefront.

40. Upon information and belief, Defendants operate merchant storefronts across multiple e-commerce marketplaces.

41. Upon information and belief, Defendants have sold more than 150,000 units of the Infringing Product.

42. Upon information and belief, Defendants' profits from the sale of the Infringing Products total more than $100,000.

43. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for small amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

44. Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court.

45. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights.

46. These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it extraordinarily difficult, if not impossible, for Plaintiff to learn the precise scope and the exact interworking of their illegal network of infringing operations. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

47. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

48. Plaintiff's Copyrighted Works constitute creative, original works of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102. The Copyrighted Works are entirely original and not derived from any other copyrighted work without permission.

49. Plaintiff is the owner of valid and enforceable copyrights in Plaintiff's Copyrighted Works.

50. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Works and has obtained valid copyright registrations for Plaintiff's Copyrighted Works. The copyright registrations were obtained prior to the commencement of the infringement alleged herein, which entitles Plaintiff to seek statutory damages and attorney's fees under 17 U.S.C. § 412.

51. Defendants do not have any ownership interest in Plaintiff's Copyrighted Works.

52. Upon information and belief, Defendants had access to Plaintiff's Copyrighted Works via the Internet and had knowledge of Plaintiff's copyrights before engaging in the infringing activities described herein.

53. Without authorization from Plaintiff, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, and publicly displayed copies of Plaintiff's Copyrighted Works in connection with the sale of Infringing Products via Defendant Internet stores.

54. Defendants have, therefore, infringed and continue to infringe Plaintiff's copyrights in Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5).

55. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Works through their receipt of substantial revenue, including substantial profit, driven by high volume sales of their Infringing Products.

56. Upon information and belief, Defendants' infringement has been willful, intentional, and in disregard of Plaintiff's rights. The widespread nature of Plaintiff's Copyrighted Works and Defendants' sophisticated business operations support a finding that Defendants were aware of their infringing activities.

57. Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

58. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

59. Considering the foregoing, and as contemplated by 17 U.S.C. § 502, Plaintiff seeks injunctive relief prohibiting further infringement of Plaintiff's Copyright by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order directing as follows:

(1) Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from:

    (a) Reproducing, distributing, publicly displaying, and preparing derivative works based upon the Copyrighted Works;

    (b)    making, using, offering to sell, selling, and importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Works;

    (c)    effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

    (d)    aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's copyrights in Plaintiff's Copyrighted Works.

(2)    Directing that Defendants deliver for destruction, at Defendants' expense, all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Works.

(3)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

    (a)    Locate all accounts connected to Defendants;

    (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c)    Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4)    Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by

Defendants are identified, Plaintiff may petition the Court for authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and online marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

    (a)    Locate all accounts connected to Defendants;

    (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c)    Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5)    Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work, per Defendant, or such other amount as the Court deems just and proper;

(6)    Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's copyright in Plaintiff's Copyrighted Works as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7)    Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(8)    Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: March 6, 2026                         Respectfully submitted,

*/s/ Keaton Smith*
Keaton Smith IL #6347736
Shengmao (Sam) Mu NY #5707021
Abby Neu IL #6327370
Ryan E. Carreon DE #7305
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (872) 294-3799
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*